IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| DANNY WILLIAMS, | : |
| Plaintiff | : |
| VS. | :     1 : 02-CV-126 (WLS) |
| JIM WETHERINGTON, RALPH KEMP, LARRY EDWARDS, STEPHEN UPTON, and DWAYNE AYERS, | : |
| Defendants. | : |

**RECOMMENDATION**

Presently pending in this § 1983 action are two (2) motions for summary judgment filed on behalf of defendants Wetherington, Edwards, Upton and Ayers, wherein they argue that the plaintiff failed to exhaust his administrative remedies prior to filing the complaint underlying this action.

The undersigned notified the plaintiff of the filing of the defendants' motions, advised him of his obligations under the law, and directed him to respond thereto within thirty (30) days of his receipt of the court's order. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." All facts and reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party, although the nonmoving party may not rest on the pleadings but must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P.

56(e); <u>Van T. Junkins & Assoc. v. U.S. Industries, Inc.</u>, 736 F.2d 656, 658 (11th Cir. 1984).

As the parties moving for summary judgment, the defendants have the initial burden to demonstrate that no genuine issue of material fact remains in this case.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986); <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604 (11th Cir. 1991).  They have supported their motions with the relevant portion of Georgia Department of Corrections Grievance Procedure and a copy of the grievance filed by the plaintiff on July 18, 2002.  In response to the defendants' summary judgment motions, the plaintiff has submitted his affidavit, along with various copies of his prison file and records and correspondence between the plaintiff and defendants.

*Exhaustion*

The PLRA mandates that all prisoners wishing to bring suits pursuant to § 1983 based on conditions of confinement violations must exhaust all available administrative remedies prior to filing a federal action.  The Act provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e (a).

In a previously filed Motion to Dismiss, the above-named defendants relied on the court's earlier order granting defendant Kemp's Motion for Summary Judgment, based on the plaintiff's failure to exhaust his administrative remedies.  As argued by defendant Kemp, the remaining defendants argued that the plaintiff "dropped the relevant grievance on May 9, 2002", and failed to properly appeal the denial of a refiled grievance.  In a recommendation dated June 5, 2004, the undersigned noted that the plaintiff's claims against the remaining defendants pertained to conditions of his confinement at Calhoun State Prison which began in July 2002, and that

"[n]othing before the court at the present time supports the contention of the remaining defendants that the grievance(s) at issue in defendant Kemp's summary judgment motion are relevant to the issue of whether plaintiff's remaining claims were properly exhausted." This recommendation was adopted and made the order of the court on or about August 9, 2004.

In the presently pending summary judgment motions, the defendants argue that the plaintiff's failure to fully exhaust his administrative remedies is apparent on the face of his complaint. Specifically, the defendants argue that inasmuch as the plaintiff was transferred to Calhoun State Prison on July 16, 2002, and this action was filed on August 2, 2002, "it is physically impossible for Plaintiff to have exhausted all administrative remedies [regarding claims arising at Calhoun] prior to filing this action." Def.'s brief at p. 8.

In response, the plaintiff asserts that he utilized the emergency grievance procedure at Calhoun State Prison, which provided the defendants ten (10) days in which to respond to plaintiff's claims. The plaintiff maintains that he did not receive a response from defendants within the allotted ten (10) day time period, and that the grievance procedure therefore did not afford him an "available" remedy. Further, the plaintiff alleges that he requested additional grievance forms regarding events occurring after July 16, 2002, but that he was denied additional grievance forms, thereby leaving him with no "available" remedies.

As the defendants point out, the Georgia Department of Corrections Standard Operating Procedures provide for the filing of emergency grievances. After such a grievance is filed, the Grievance Coordinator determines if the situation is truly an emergency, in which case the grievance is fast-tracked and a response issued within ten (10) days. Otherwise, the grievance passes through normal channels. As evidenced in the copies of plaintiff's grievance and the responses thereto filed in support of defendants' motions for summary judgment, plaintiff's

grievance, filed on July 18, 2002, was determined by Grievance Coordinator Erich Williams not to be an emergency. The warden issued a response to the grievance on August 21, 2002, well after the plaintiff signed his complaint herein on July 30, 2002, and filed same on August 2, 2002. Therefore, as the defendants argue, the plaintiff could not have fully pursued and exhausted the grievance and/or appeals process prior to filing this lawsuit. In order to satisfy the exhaustion requirement, an inmate must fully pursue all available administrative remedies, including pursuing and completing all levels of appeal. Moore v. Smith, 18 F. Supp. 2d 1360, 1363 (N.D.Ga. 1998); Harper v. Jenkin, 179 F.3d 1311 (11th Cir. 1999) (inmate who failed to seek leave to file an out-of-time grievance failed to exhaust his administrative remedies as required by the PLRA). Moreover, "'the plain language of the statute makes exhaustion a precondition to filing an action in federal court.'" Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (quoting Freeman v. Francis, 196 F.3d 641, 643-44 (6th Cir. 1999)). "The PLRA mandates complete administrative review of all claims before an inmate may bring a § 1983 action". Beeson v. Fishkill Correctional Facility, 28 F. Supp. 2d 884 (S.D.N.Y. 1998). Plaintiff's argument that his grievance was not ruled a "non-emergency" within the ten (10) day time period does not affect the outcome herein, as it remains clear that the grievance process was on-going and plaintiff's grievance remained pending at the time plaintiff filed the complaint herein. Regardless of the status of plaintiff's grievance and the notification provided to him regarding the emergency petition, the grievance proceeded through the prison procedures and provided the plaintiff with an "available remedy" at the time this action was filed.

Finally, the plaintiff has failed to come forth with anything more than conclusory allegations that he was refused additional grievance forms, and states in his affidavit that he was provided additional forms after filing his complaint on July 30, 2002. The plaintiff provides no

details establishing that he was damaged in any way by any delay in providing him with additional grievance forms. To the extent that the plaintiff argues that his claims seeking declaratory and injunctive relief are not subject to the PLRA's exhaustion requirements, the court notes that the Eleventh Circuit in Alexander specifically found that "[e]ven prior to the PLRA, this Court held that prisoners seeking monetary damages *and injunctive relief* should exhaust administrative grievance procedures . . . before filing a section 1983 action regarding prison conditions." Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

*Retaliatory transfer*

The plaintiff argues that his claims of retaliatory transfer against defendants Kemp and Wetherington remain pending and concern matters not grievable within the prison grievance system.[1] In his original complaint, the plaintiff alleges that defendant Kemp and defendant Wetherington directed his transfer from Wheeler State Prison to Calhoun State Prison, in retaliation for the filing of grievances and lawsuits against prison officials. The defendants maintain that the issue of retaliation is grievable, as opposed to the issue of the actual transfer itself, and that the plaintiff in fact included the retaliation issue in his July 18, 2002, grievance.

The relevant section of the grievance policy provides that "[t]he *reasonable* transfer of inmates is necessary to maintain the work and stability of the prison system, and is therefore not a basis for a grievance." § IIB05-0001 (B)(2)(c). In his July 18, 2002, grievance, the plaintiff himself argues that although reasonable transfers are not the proper subject of the grievance procedure(s), retaliatory transfers may be grieved. Regardless of the correct interpretation of the

---

[1]The plaintiff did not raise these arguments in response to defendant Kemp's summary judgment motion or in his objections to the recommendation to grant that portion of Kemp's motion pertinent to the issue of exhaustion under the PLRA.

SOPs governing grievances, the court notes that in ultimately issuing a ruling on plaintiff's grievance, Warden Upton determined that the transfer itself was "non-grievable", essentially shutting off this available remedy to the plaintiff.  See Miller v. Tanner, 196 F.3d 1190 (11th Cir. 1999).

To the extent that plaintiff's retaliatory transfer claims were found by prison authorities to be "not grievable" within the prison grievance system, the plaintiff has nonetheless failed to overcome the defendants' summary judgment showing that these claims fail on their merits. Allegations that prison officials' actions were taken in retaliation for the filing of lawsuits or administrative grievances "bring[s] [such] actions that might not otherwise be offensive to the Constitution . . . within the scope of the Constitution . . . This type of retaliation violates both the inmate's right of access to the courts and the inmate's First Amendment rights." Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986).  However, a plaintiff bringing a retaliation claim must provide more than conclusory allegations of the defendant's retaliatory motive in order to survive the defendant's properly supported summary judgment motion. McCain v. Scott, 9 F. Supp.2d 1365, 1370 (N.D.Ga. 1998).

In order to establish his claim of retaliation, the plaintiff must show that he was engaged in protected conduct, which conduct was a substantial or motivating factor in the retaliatory action. Mt. Healthy City School Dist. v. Doyle, 97 S. Ct. 568, 576 (1977).  "The inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) (quoting Cain v. Lane, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988)).

As set out in defendant Kemp's affidavit supporting his summary judgment motion (Docket # 59), the Inmate Classification Section of the Georgia Department of Corrections

directed the plaintiff's transfer to Calhoun State Prison in July 2002.  Kemp, the warden at Wheeler State Prison during the time period in question, states that he did not direct plaintiff's transfer in retaliation for filing grievances and other lawsuits, and in fact "[did] not have the authority to determine when an inmate will be transferred" at all.   Kemp affidavit at ¶¶ 2, 8. Kemp further states that on April 3, 2002, the plaintiff was placed in administrative segregation pending investigation for his involvement with a White Supremacist prison gang, during which time threats of violence continued to be issued by the plaintiff toward other inmates and vice versa . Also during this time, plaintiff was being investigated by the State Bar of Georgia, the IRS, and the treasury department for his involvement in a tax scam and the unauthorized practice of law.   Plaintiff's transfer "served the legitimate penealogical [sic] interests of protecting Plaintiff's well-being and maintaining the peace and safety at Wheeler Correctional Facility." Kemp affidavit at ¶ 11.

In support of his argument that Kemp and Wetherington retaliated against him by transferring him to another prison, the plaintiff points to the fact that he filed numerous grievances while confined at Wheeler State Prison, that he filed "an appeal in a civil rights action involving the GDC", and that he served Kemp and Wetherington with "notice of violations" and his intent to seek legal recourse prior to the transfer.  Additionally, the plaintiff asserts in his affidavit that he had been assigned a "medium" security status since 1998 and had "no major disciplinary violations in my records."  Plaintiff's Affidavit at p.3.  (Docket  # 118).  Although the plaintiff has submitted a copy of a one-page document that appears to pertain to the transfer at issue, said document merely reflects that "[inmate] needs to trsf. due to being involved in a tax scam.  He needs to be transferred per the warden.  He is a management problem".  Exhibit 2, Plaintiff's brief in opposition to defendants' summary judgment motion (Docket # 118).  This

reference to a request from the warden that plaintiff be transferred does not overcome the defendants' showing that neither defendant Kemp nor Wetherington controlled or directed the plaintiff's transfer, but rather affirms that plaintiff's involvement in a tax scam motivated the request for transfer.  The court notes as well that this document submitted by the plaintiff is in no way certified or authenticated, an objection vehemently raised by the plaintiff against documents submitted by the defendants.

    The plaintiff herein has failed to refute the defendants' summary judgment showing and the contentions therein, evidencing that the plaintiff was transferred based on beliefs that he was involved in activities that put himself and prison management at risk.  Although plaintiff denies any allegation of wrongdoing on his part and alleges that his transfer followed the filing of grievances, some type of appeal, apparently involving an action filed in this court, and notices to the defendants and others of impending legal action(s), he has failed to produce any evidence supporting these contentions, other than copies of the notices sent to Wetherington, Kemp and others at various times both before and after his transfer to Calhoun State Prison.[2]  He has essentially failed to provide the court with any evidence beyond his conclusory allegations of retaliation.  Although a plaintiff bringing a claim based on an official's improper motive need not adduce clear and convincing evidence of said motive to defeat a summary judgment motion, the plaintiff "must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive."  Crawford-El v. Britton, 118 S. Ct. 1584, 1598 (1998).  This the plaintiff has failed to do.  Additionally, the plaintiff does not "allege a chronology of events from which retaliation may plausibly be inferred."  Woods, 60 F.3d at

---

[2]Plaintiff apparently references Civil Action No. 5 : 01-CV-292 (DF), which remains pending in this court and at one time named Wetherington as a defendant.

1166.

In regard to defendant Wetherington, Commissioner for the Georgia Department of Corrections, defendant Kemp's affidavit and the transfer documents submitted by the plaintiff make it clear that Wetherington personally had nothing to do with plaintiff's transfer from Wheeler to Calhoun in July 2002.  The plaintiff has failed to overcome this showing, arguing only that the Commissioner must approve all transfers, with no documentation evidencing any actual involvement by defendant Wetherington in the transfer at issue.

Accordingly, the undersigned finds that the plaintiff has failed to overcome the defendants' summary judgment showing that he did not exhaust his available administrative remedies prior to the filing of this lawsuit in regard to the claims arising at Calhoun State Prison.  Furthermore, the undersigned finds that the plaintiff has failed to overcome the defendants' summary judgment showing that neither defendant Kemp nor defendant Wetherington transferred the plaintiff as an act of retaliation.  It is therefore the recommendation of the undersigned that the defendants' motions for summary judgment be **GRANTED**.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable W. Louis Sands, Chief United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 2nd day of August, 2005.

/s/ *Richard L. Hodge*  
RICHARD L. HODGE  
UNITED STATES MAGISTRATE JUDGE

asb

10